UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT TACOMA

| | |
|---|---|
| VICKY CLOSE,<br>for herself, as a private attorney general,<br>and on behalf of all others similarly situated,<br><br>                        Plaintiff,<br><br>v.<br><br>PENNEY OPCO LLC, and<br>DOE DEFENDANTS 1 to 5,<br><br>                        Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT, RCW 19.86**<br><br><br>**JURY TRIAL DEMANDED** |

1    Plaintiff Vicky Close, individually, as a private attorney general, and on behalf of all

2    others similarly situated, alleges as follows, on personal knowledge and the investigation of her

3    counsel, against Defendant Penney OpCo LLC ("JCPenney" or "Defendant"):

4    **I.    INTRODUCTION AND SUMMARY**

5         1.    JCPenney operates JCPenney retail stores and its website, jcpenney.com, where

6    it advertises, markets, and sells clothing, footwear, accessories, jewelry, home furnishings,

7    beauty products, and other related items throughout Washington and the United States.

8         2.    For years, JCPenney has engaged in a massive false discount advertising scheme

9    across nearly all of its products on both its website and in its retail stores. Specifically,

10   JCPenney advertises perpetual, never-ending discounts for approximately 90% of its products.

11   JCPenney's discounts typically range from between 25% to 70% off of JCPenney's advertised

12   list prices for the products. JCPenney represents these list prices to be the regular and normal

13   prices of the products, and the list prices function as "reference prices" from which the

14   advertised discounts are calculated.

15        3.    JCPenney's advertised discounts and reference prices are false because

16   JCPenney rarely, if ever, offers its products at their advertised list price.

17        4.    JCPenney's deceptive pricing scheme is intended to trick consumers into

18   believing that its products are worth, and have a market value equal to, the inflated list price,

19   and that the lower advertised "sale" price represents a special bargain. JCPenney perpetrates

20   this illegal scheme in order to induce consumers to purchase its products and to charge more for

21   its products than it otherwise could have charged.

22        5.    JCPenney's false discount advertising harms consumers like Ms. Close by

23   causing them to pay more than they otherwise would have paid and to buy products that they

24   otherwise would not have bought. Customers do not enjoy the actual discounts JCPenney

25   promises them, and the items are not in fact worth the amount that JCPenney represents to

26   them. JCPenney's deceptive pricing scheme also artificially increases the demand for its

27   products and causes all customers, including Ms. Close and Class members, to pay price

28   premiums to JCPenney.

CLASS ACTION COMPLAINT

- 2 -

6.     JCPenney's false discount advertising violates the Washington Consumer Protection Act (the "CPA"), RCW 19.86.

7.     Ms. Close brings this lawsuit individually and on behalf of a class of Washington consumers who purchased from JCPenney one or more products advertised with a discount. Ms. Close seeks damages (which may be trebled) for herself and for each of the Washington class members. Additionally, Ms. Close, acting as a private attorney general, seeks public injunctive relief to protect the general public by enjoining JCPenney from engaging in the unlawful false advertising scheme alleged herein.

## II.     THE PARTIES

8.     Plaintiff Vicky Close is a citizen and resident of the city of Kalama, in Cowlitz County, Washington, and is an unsophisticated consumer party.

9.     Defendant Penney OpCo LLC is a limited liability company with its principal place of business in Plano, Texas. Penney OpCo LLC owns and/or operates the JCPenney website jcpenney.com and 659 JCPenney brick-and-mortar retail stores throughout the United States including 15 stores in Washington. Penney OpCo LLC has owned and managed the assets and brand name of JCPenney, including the JCPenney website and retail stores, since JCPenney emerged from Chapter 11 bankruptcy on December 7, 2020.

10.     Doe Defendants 1 to 5 are other entities related to Defendant Penney OpCo LLC who have engaged or are engaging in the unlawful acts alleged herein. Plaintiff anticipates amending this Complaint after discovery establishes the identities of these defendants.

## III.     JURISDICTION AND VENUE

11.     **Subject Matter Jurisdiction.** This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the amount in controversy, exclusive of interest and costs, exceeds $5,000,000, and this is a proposed class action in which there are members of the proposed Class who are citizens of a state different from the Defendant.

12.     **Personal Jurisdiction.** This Court has personal jurisdiction over Defendant because, without limitation: (1) Defendant is authorized to do business and regularly conducts business in the Washington; (2) the claims alleged herein took place in Washington; and/or

---

CLASS ACTION COMPLAINT

1

(3) Defendant has committed tortious acts within Washington (as alleged, without limitation, throughout this Complaint). Defendant has sufficient minimum contacts with Washington to render the exercise of jurisdiction by this Court permissible.

13. **Venue.** Venue is proper pursuant to 28 U.S.C. §1391 because Plaintiff is a Washington citizen who resides in this District. Plaintiff also made her purchase in this District.

14. **Intradistrict Assignment.** The Tacoma Division is the proper division under LCR 3(e). Plaintiff resides in Cowlitz County, which is part of the Tacoma Division. Also, a substantial part of the events or omissions giving rise to the claim occurred in the Tacoma Division, including without limitation, Plaintiff viewed the JCPenney website and made her purchases from her home in Cowlitz County.

## IV. JCPENNEY'S FALSE DISCOUNT ADVERTISING SCHEME

15. JCPenney operates JCPenney retail stores and its website, jcpenney.com, where it advertises, markets, and sells clothing, footwear, accessories, jewelry, home furnishings, beauty products, and other related items throughout Washington and the United States. JCPenney sells private and exclusive products of in-house brands that are only available from JCPenney, as well as products from national brands.

16. For years, JCPenney has engaged in a massive false discount advertising scheme across approximately 90% of its products on the JCPenney website and in its retail stores. JCPenney advertises perpetual or near-perpetual discounts from a false higher reference price in order to trick its customers into believing the advertised "sale" price represents a special bargain from JCPenney's usual and regular prices. JCPenney's discounts typically range from between 25% to 70% off of JCPenney's advertised list prices for its products. However, unbeknownst to its customers, JCPenney's "sales" are never-ending, and its products are never or virtually never offered at the supposed regular price. JCPenney perpetrates this illegal scheme in order to induce consumers to purchase its products and to increase the amount it can charge for its products.

17. JCPenney advertises these discounts extensively on its website, including in large banner images on its homepage; on the product listing pages; on the individual product

**HATTIS & LUKACS**
11711 SE 8ᵗʰ St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

pages; and on the checkout pages. JCPenney advertises these discounts in a variety of ways, such as, by stating that categories of products are "XX% off" or "up to XX% off"; by advertising strikethrough list prices next to lower, purported discount prices with the word "sale" in red font next to the price; by advertising on product pages "XX% off" next to a strikethrough list price and purported "sale" price (and often advertising in bold red font a selling price that is even lower than the "sale" price when using a provided coupon code); by advertising "Save $XX.XX with code" or "extra XX% off with coupon" in red font (where that coupon code is provided in the advertisement itself and JCPenney provides a prominent "Apply" button to apply the code in the shopping cart such that JCPenney ensures every single purchaser applies the coupon code and receives the purportedly discounted price); by describing a supposed discount price as a "LIMITED TIME SPECIAL!" or a "FLASH SALE!" in italicized red font; and by identifying the supposed savings next to each item in the customer's shopping cart, as well as stating "Total Savings: $XX.XX" directly below the total price of the order throughout the entire purchase process.

18.     Below are example screenshots from JCPenney's website:

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com



# JCPenney Product List Page August 13, 2024





New! Levi's The Ultimate Western Womens Fitted Sleeve Western Shirt
**$48.65** *sale*
*$69.50*
★★★★★ 1

New! a.n.a Womens High Rise Straight Leg Jean
**$23.99** *with code* *$48*

Ambrielle Womens Short Sleeve 2-pc. Shorts Pajama Set
**$27.44** *with code* *$49*
★★★★★ 4







New! St. John's Bay-Plus Adaptive Womens Mid Rise Bootcut Easy-on + Easy-off Jean
**$27.99** *with code* *$58*

St. John's Bay Belted Mens Straight Fit Cargo Pant
**$25.59** *with code* *$58*
★★★★½ 113

Arizona Mens Rayon Short Sleeve Button-Up Shirt
**$23.99** *with code* *$36*
★★★★☆ 5







St. John's Bay Womens A-Line Skirt
**$22.39** *with code* *$44*
★★★★★ 11

St. John's Bay Womens V Neck Short Sleeve T-Shirt
*GOTTA HAVE IT PRICE!*
**$6.39** *with code* *$14*
★★★★★ 668  +10

Yes, Please! Lab Created White Sapphire Sterling Silver Round 2-pc. Jewelry Set
*LIMITED TIME SPECIAL!*
**$15** *sale*
*$74.98*
★★★★★ 31

---

CLASS ACTION COMPLAINT

5



**JCPenney Shopping Cart August 12, 2024**



**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

19.     JCPenney likewise advertises these discounts extensively throughout its retail stores, including on large signs next to clothing racks, shelves, and tables. On these large signs, JCPenney advertises products with a "sale" price alongside the product's "reg." price. In some cases, JCPenney will also advertise a "XX% OFF" discount next to the "sale" price and "reg." price for the product. Below are example photos taken at a JCPenney retail store on August 14, 2024. All of the products listed in the photos below are exclusive products of in-house JCPenney brands that are only offered by JCPenney.






CLASS ACTION COMPLAINT

7

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

20.     JCPenney advertises false regular prices and fake discounts for over 90% of the products it offers.

21.     For example, on August 21, 2024, JCPenney represented that the "Worthington Womens Victoria Block Heel Pumps" had a regular list price of $60 and were on "**<span style="color:red">sale</span>**" for $34.99, such that consumers would save "41% off" of the regular list price, and that consumers could purchase them now for even less, "**<span style="color:red">$27.99</span>** *<span style="color:red">with code</span>* **<span style="color:red"><u>UMBRELLA</u></span>**." The Pumps were an exclusive JCPenney product from JCPenney's in-house brand Worthington.

## JCPenney Product Webpage August 21, 2024



22.     In reality, the Worthington Womens Victoria Block Heel Pumps listed regular price of $60 was not their regular price.

23.      Instead, JCPenney always offered the Pumps at a discount from the purported regular price of $60. Counsel's investigation shows that the Pumps were never—not for a single day—offered at the $60 price. In fact, in the prior 6 months, the highest price the Pumps were ever offered for was $33.99, and they typically were offered for between $17.99 and $31.99. And, in the prior month, JCPenney had usually offered the Pumps for between $17.99 and $19.99.

**HATTIS & LUKACS**
11711 SE 8ᵗʰ St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

24.     For example, on July 26, 2024, JCPenney offered the Pumps for $19.99:

**JCPenney Product Webpage July 26, 2024**



25.     Thus, JCPenney customers who purchased the Pumps during the purported August 21, 2024 "sale" at the $27.99 advertised discounted price (41% advertised discount plus an additional $7 off with the provided coupon code) were not receiving the advertised and promised discount. Indeed, customers who paid the supposed "sale" price (with two different supposed discounts applied) were actually being tricked by JCPenney into paying <u>more</u> than JCPenney's true regular price for the Pumps.

26.     To use another product as an example, on August 21, 2024, JCPenney represented that the "Casual Comfort Solid 7-pc Dorm In A Bag" (the "Bedding") had a regular list price of $160 and was on "**sale**" for $89.99, such that consumers would save "43% off" of the regular list price, and that consumers could purchase it now for even less, "**$71.99 with code UMBRELLA**." The Bedding was an exclusive JCPenney product from JCPenney's in-house brand Casual Comfort.



27.     In reality, the Casual Comfort Solid 7-pc Dorm In A Bag's listed regular price of $160 was not its regular price. Instead, JCPenney had always advertised it at a discount from the purported regular price of $160—ever since JCPenney first introduced the product over a month earlier, around July 7, 2024.

28.     In fact, on the very first day that JCPenney offered the Bedding, JCPenney offered it for $59.99. And since then, JCPenney had usually offered the Bedding for between $59.99 and $62.99.

29.     Thus, customers who paid the supposed "sale" price of $71.99 for the Bedding on August 21, 2024, were not receiving the promised discount from the purported $160 regular price. Indeed, they were actually being tricked by JCPenney into paying <u>more</u> than JCPenney's regular price for the Bedding.

30.     JCPenney also advertises "free" offers for its products, such as "Buy 1 Get 1 Free" or "Buy 1 Get 2 Free." Advertised "free" offers such as these are viewed both under the law and by reasonable consumers to mean that the consumer is getting the "free" item(s) at no cost in conjunction with the purchase of the first item at no more than that item's regular price.

CLASS ACTION COMPLAINT

10

**HATTIS & LUKACS**
11711 SE 8ᵗʰ St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

However, in all cases, JCPenney's promise of "Buy 1 Get 1 Free" or "Buy 1 Get 2 Free" is false or misleading. Whenever JCPenney makes such a purported "free" offer, JCPenney inflates the first item's selling price to its never otherwise charged list price. Because the item is "discounted" by up to 50-70% off the list price at all other times, this means JCPenney is directly recovering all of the cost, or even more than the cost, of the "free" item(s) by increasing the price of the first item, such that the free offer is illusory, and the customer is not getting any deal at all.

31. For example, from July 27, 2024, through July 31, 2024, JCPenney offered the "Arizona Jean Co Fairhaven Womens Adjustable Strap Footbed Sandals" (the "Sandals") at their $60 list price with a "***BUY 1 GET 2 FOR FREE LIMITED TIME SPECIAL!***" The Sandals were an exclusive JCPenney product from JCPenney's in-house brand Arizona Jean Co.

32. However, on August 1, 2024, when the "Buy 1 Get 2 Free" sales event had ended, JCPenney offered the Sandals for $13.99 using a provided coupon code. In other words, customers paid 43% more ($6.01 more) per pair of Sandals by buying them during the "Buy 1 Get 2 Free" sales event (at an average $20 per pair of Sandals) than they would have paid if they had skipped the "sale" and bought them afterwards at $13.99 per pair of Sandals. See the screenshots of the Sandals taken on July 31, 2024, and August 1, 2024, below.

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

| **July 31, 2024** | **August 1, 2024** |
|:---:|:---:|
|  |  |

33. Meanwhile, the advertised regular price of $60 for the Arizona Jean Co Fairhaven Womens Adjustable Strap Footbed Sandals is not their true regular price. Rather, since March 11, 2024, the most JCPenney had ever offered the Sandals for was $33.99, and the Sandals had usually been offered for between $13.99 and $24.99.

34. Thus, customers never received the promised discount on the Sandals. And, when the Sandals were offered at the $60 price with a "free" offer, the customers were not receiving the "free" offer at all because JCPenney was directly recovering all of the cost—indeed, <u>more</u> than the cost—of the "free" item(s) by increasing the price of the first pair far above their regular selling price.

## V. PLAINTIFF'S ALLEGATIONS ARE BASED ON HER COUNSEL'S COMPREHENSIVE INVESTIGATION INTO JCPENNEY'S PRACTICES

35. Plaintiff's allegations are based on her counsel's comprehensive investigation into JCPenney's false discount advertising practices. Plaintiff's counsel has been monitoring and scraping JCPenney's website on an automated daily basis with a proprietary software program since October 10, 2015. Plaintiff's counsel has compiled and extracted daily pricing

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

and marketing data from the JCPenney website for nearly all of the products JCPenney has offered during this time. In total, Plaintiff's counsel has assembled and analyzed a comprehensive historical database of daily prices and time-stamped screenshots of over 200 million daily product offerings for over 800,000 products over this period.

36.     Plaintiff's counsel's exhaustive big-data analysis of millions of data points, including since December 7, 2020 (the date Defendant Penney OpCo acquired and began managing the operations of JCPenney) shows that JCPenney has advertised perpetual or near-perpetual discounts for approximately 90% of the products that it offers. The advertised website-wide "sales" events and advertised percentage-off and dollar discounts were false, and JCPenney's list prices (i.e., reference prices) from which the discounts were calculated were false and inflated.

37.     Plaintiff's counsel also visited multiple JCPenney retail stores to investigate JCPenney's in-store practices. Based on the investigation of Plaintiff's counsel, JCPenney offers and advertises its products with identical list prices and at substantially the same sale prices both on the JCPenney website and in its retail stores.

38.     In fact, JCPenney effectively treats its online and in-store sales channels as the same. Customers can make purchases through the JCPenney website and pick the items up in-store that same day. JCPenney also encourages its customers, in-store, to view JCPenney's website for additional colors or styles of the items that the customers are viewing live in the retail store. JCPenney even has its own JCPenney app to make shopping easier to do on the phone.

## VI.     JCPENNEY'S FALSE DISCOUNT ADVERTISING SCHEME HARMS CONSUMERS AND VIOLATES WASHINGTON LAW

39.     Decades of academic research has established that the use of reference prices and discount advertising like that utilized by JCPenney materially impacts consumers' behavior. A reference price affects a consumer's perception of the value of the transaction, the

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

consumer's willingness to make the purchase, and the amount of money the consumer is willing to pay for the product.[1]

40.      When a reference price and corresponding discount is bona fide and truthful, it may help consumers in making informed purchasing decisions. In contrast, consumers are harmed when retailers, such as JCPenney, advertise their products with inflated false reference prices. The false reference prices deceive consumers, deprive consumers of a fair opportunity to accurately evaluate the offer, and result in purchasing decisions based on false pretenses.

41.      As a direct and proximate result of JCPenney's false reference prices and false discounts, Plaintiff and Class members were harmed and lost money or property.

42.      First, Plaintiff and Class members were harmed because they would not have purchased the items at the prices they paid had they known that the discounts were fake and that the items had not in fact been regularly offered at the higher listed price. *See Williams v. Lifestyle Lift Holdings, Inc.*, 175 Wash. App. 62, 302 P.3d 523, 528–29 (2013) (holding that the plaintiff stated a claim under the CPA based on her allegations that "she would not have given

[1] *See, e.g.*, Richard Staelin, Joel E. Urbany & Donald Ngwe, *Competition and the Regulation of Fictitious Pricing*, 87 J. of Mktg. 826 (2023); Mark Armstrong & Yongmin Chen, *Discount Pricing*, 58 Econ. Inquiry 1614 (2020); Rajesh Chandrashekaran & Dhruv Grewal, *Assimilation of Advertised Reference Prices: The Moderating Role of Involvement*, 79 J. Retailing 53 (2003); Pilsik Choi & Keith S. Coulter, *It's Not All Relative: The Effects of Mental and Physical Positioning of Comparative Prices on Absolute Versus Relative Discount Assessment*, 88 J. Retailing 512 (2012); Larry D. Compeau & Dhruv Grewal, *Comparative Price Advertising: An Integrative Review*, 17 J. Pub. Pol'y & Mktg. 257 (1998); Larry D. Compeau, Dhruv Grewal & Rajesh Chandrashekaran, *Comparative Price Advertising: Believe It or Not*, 36 J. Consumer Aff. 284 (2002); David Friedman, *Reconsidering Fictitious Pricing*, 100 Minn. L. Rev. 921 (2016); Dhruv Grewal & Larry D. Compeau, *Consumer Responses to Price and its Contextual Information Cues: A Synthesis of Past Research, a Conceptual Framework, and Avenues for Further Research*, in 3 Rev. of Mktg. Res. 109 (Naresh K. Malhotra ed., 2007); Daniel J. Howard & Roger A. Kerin, *Broadening the Scope of Reference Price Advertising Research: A Field Study of Consumer Shopping Involvement*, 70 J. Mktg. 185 (2006); Aradhna Krishna, Richard Briesch, Donald R. Lehmann & Hong Yuan, *A Meta-Analysis of the Impact of Price Presentation on Perceived Savings*, 78 J. Retailing 101 (2002); Balaji C. Krishnan, Sujay Dutta & Subhash Jha, *Effectiveness of Exaggerated Advertised Reference Prices: The Role of Decision Time Pressure*, 89 J. Retailing 105 (2013); Gorkan Ahmetoglu, Adrian Furnham, & Patrick Fagan, *Pricing Practices: A Critical Review of their Effects on Consumer Perceptions and Behavior*, 21 J. of Retailing & Consumer Servs. 696 (2014); Bruce L. Alford & Abhijit Biswas, *The Effects of Discount Level, Price Consciousness and Sale Proneness on Consumers' Price Perception and Behavioral Intention*, 55 J. Bus. Res. 775 (2002); and Tridib Mazumdar, S. P. Raj & Indrahit Sinha, *Reference Price Research: Review and Propositions*, 69 J. Mktg. 84 (2005).

CLASS ACTION COMPLAINT

14

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

her money to [defendants] but for their [false] advertising," with the injury being the money she spent); *see also Fitzgerald v. Shade Store, LLC*, 2024 WL 3540540, at *2 (W.D. Wash. July 25, 2024) ("Inducing a plaintiff into spending money she otherwise would not have spent, based on a misrepresentation, is clearly a cognizable injury under the CPA.") (internal quotation marks omitted); *Nemykina v. Old Navy, LLC*, 461 F. Supp. 3d 1054, 1061 (W.D. Wash. 2020) (same). Consumers that are presented with discounts are substantially more likely to make the purchase. "Nearly all consumers (94%) search for a deal or offer when shopping online," "81% of [consumers] say finding a great offer or discount is on their mind throughout the entire purchase journey," and "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount." RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).

43. Second, Plaintiff and Class members were harmed because they did not receive the benefits of their bargain. Plaintiff and Class members did not enjoy the actual discounts JCPenney represented and promised to them. Plaintiff and Class members did not receive items that were worth the inflated amount that JCPenney represented to them; the items did not regularly sell for, and did not have a market value of, the fictitious and invented list price advertised by JCPenney.

44. Third, Plaintiff and Class members were harmed because they paid a price premium due to illegitimately inflated demand resulting from JCPenney's deceptive pricing scheme. JCPenney's false discount advertising scheme artificially increases consumer demand for JCPenney's products, which shifts the demand curve and allows JCPenney to charge more for its products than it otherwise could have charged (i.e., a price premium) absent the misrepresentations. JCPenney's false advertising scheme has enabled JCPenney to charge everyone more for all of its products by artificially stimulating demand based on false pretenses. *See, e.g.*, Richard Staelin, Joel E. Urbany & Donald Ngwe, *Competition and the Regulation of Fictitious Pricing*, 87 J. of Mktg. 826, 836 (2023) (observing that "numerous

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

empirical studies on the effects of promotions" have shown that promotions cause an "outward shift" in the demand curve (i.e., a price premium), which can be "substantial").

45. In addition to harming consumers, the practice of employing false reference prices and false discounts also negatively affects the integrity of competition in retail markets. A retailer's use of false reference prices constitutes an unfair method of competition and harms honest competitors that sell the same or similar products, or otherwise compete in the same market, using valid and accurate reference prices and true "sales." Businesses who play by the rules—and the investors in those businesses—are penalized if the unlawful advertising practices of their competitors go unchecked.

46. Courts have articulated the abuses that flow from false discount advertising pricing practices. For example, the Ninth Circuit explained: "Most consumers have, at some point, purchased merchandise that was marketed as being 'on sale' because the proffered discount seemed too good to pass up. Retailers, well aware of consumers' susceptibility to a bargain, therefore have an incentive to lie to their customers by falsely claiming that their products have previously sold at a far higher 'original' price in order to induce customers to purchase merchandise at a purportedly marked-down 'sale' price." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1101 (9th Cir. 2013).

47. Washington law, as well as federal regulations which guide Washington law, prohibit false reference pricing practices such as those perpetrated by JCPenney.

48. The Washington Consumer Protection Act (the "CPA"), RCW 19.86, is Washington's principal consumer protection statute.

49. "The consumer protection provisions of the CPA were modeled after Section 5 of the Federal Trade Commission Act, 15 U.S.C.A. § 45." Washington Pattern Jury Instruction No. 310.00 (Consumer Protection Act — Introduction).

50. The purpose of the CPA "is to complement the body of federal law governing restraints of trade, unfair competition and unfair, deceptive, and fraudulent acts or practices in order to protect the public and foster fair and honest competition." RCW 19.86.920.

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

51.     The CPA broadly declares unlawful all "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020.

52.     JCPenney's false discount advertising scheme constitutes unfair methods of competition and/or unfair or deceptive acts or practices which directly affect the people of Washington, and which have injured Plaintiff, the members of the Class, honest competing businesses, the integrity of the retail marketplace, and the general public.

53.     There are a number of ways for an act or practice to be unfair or deceptive.

54.     An act or practice is <u>deceptive</u> if it is "likely to mislead a reasonable consumer." *Panag v. Farmers Ins. Co. of Washington*, 166 Wash. 2d 27, 50, 204 P.3d 885, 895 (2009). Further, "[t]he capacity of a marketing technique to deceive is determined with reference to the least sophisticated consumers among us." *Keithly v. Intelius*, 764 F. Supp. 2d 1257, 1268 (W.D. Wash. 2011); *see also Panag*, 204 P.3d at 895 (same).

55.     Acts or practices are <u>unfair</u> under the "substantial injury test," if they (1) cause substantial injury to consumers (2) which is not reasonably avoidable by consumers themselves and (3) not outweighed by countervailing benefits to consumers or to competition. *Greenberg v. Amazon.com, Inc.*, 553 P.3d 626, 641 (Wash. 2024).

56.     Acts or practices are also <u>unfair</u> if they are "in violation of public interest." *Greenberg v. Amazon.com, Inc.*, 553 P.3d 626, 641 (Wash. 2024); *see also Klem v. Washington Mut. Bank*, 176 Wash. 2d 771, 787, 295 P.3d 1179, 1187 (2013) (same).

57.     Additionally, the CPA states that, in determining whether an act is unlawful under the CPA, courts should look for guidance to how the Federal Trade Commission ("FTC") has dealt with similar subject matter. "It is the intent of the legislature that, in construing this act, the courts be guided by final decisions of the federal courts and final orders of the federal trade commission interpreting the various federal statutes dealing with the same or similar matters …" RCW 19.86.920.

58.     The FTC's regulations prohibit false or misleading "former price comparisons." 16 C.F.R § 233.1. For example, an advertised former price is false when it is "an artificial,

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

inflated price [that] was established for the purpose of enabling the subsequent offer of a large reduction—the 'bargain' being advertised is a false one; the purchaser is not receiving the unusual value he expects." 16 C.F.R § 233.1(a).

59.     The FTC also warns sellers advertising "Free" offers that "such offers must be made with extreme care so as to avoid any possibility that consumers will be misled or deceived." 16 C.F.R. § 251.1(a)(2). "[W]hen the purchaser is told that an article is 'Free' to him if another article is purchased, the word 'Free' indicates that he is paying nothing for that article and no more than the regular price for the other. Thus, a purchaser has a right to believe that the merchant will not directly and immediately recover, in whole or in part, the cost of the free merchandise or service by marking up the price of the article which must be purchased[.]" 16 C.F.R. § 251.1(b)(1). Accordingly, it is deceptive for a seller making a "Free" offer to "increase[] his regular price of the article required to be bought." 16 C.F.R § 233.4(b).

60.     "Regular price" means "the price, in the same quantity [and] quality, … at which the seller or advertiser of the product or service has openly and actively sold the product or service in the geographic market or trade area in which he is making a 'Free' or similar offer in the most recent and regular course of business, for a reasonably substantial period of time, i.e., a 30–day period." 16 C.F.R. § 251.1(b)(2).

61.     As alleged in detail above, JCPenney's advertised reference prices and discounts violate Washington law because, based on the investigation of Plaintiff's counsel, JCPenney's advertised reference prices are inflated and fictitious, and JCPenney's advertised percentage-off and dollars-off discounts are false. JCPenney's reference prices and discounts are false because JCPenney advertises perpetual discounts for approximately 90% of its products, and rarely if ever offers its discounted products at their advertised list price.

62.     Additionally, as alleged in detail above, JCPenney advertises "free" offers for its products (such as "Buy 1 Get 1 Free" or "Buy 1 Get 2 Free"), but the "free" item(s) are not actually free because JCPenney charges a price for the purchased item that is higher than the item's regular price. In doing so, JCPenney directly recovers all, and often more than, the cost

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

of the "free" item(s) by increasing the price of the first item, such that the "free" offer is illusory, and the customer is not getting any deal at all.

63. The false reference price and false discount representations by JCPenney were material to the decisions of consumers to purchase each product. Because of the false reference price and false discount representations, consumers reasonably believed they would be receiving significant savings if they purchased these products, and consumers purchased these products on the basis of these representations in order to enjoy the purported discounts.

64. JCPenney's false reference price and false discount representations are likely to mislead a reasonable consumer, and in fact did mislead Plaintiff.

65. As detailed above, JCPenney's false reference price and false discount representations caused substantial injury to consumers. Consumers could not reasonably avoid these injuries because JCPenney's false advertising was hidden from consumers. And, JCPenney's false advertising has no countervailing benefits to consumers or to competition— let alone any that would outweigh the harm done.

66. As detailed above, JCPenney's false reference price and false discount representations are in violation of public interest because they deceive consumers, deprive consumers of a fair opportunity to accurately evaluate the offer, and result in purchasing decisions based on false pretenses. In addition to harming consumers, JCPenney's false advertising also negatively affects the integrity of competition in retail markets and harms honest competitors that sell the same or similar products, or otherwise compete in the same market.

67. JCPenney's marketing plan is to deceive its customers into believing that its products are worth, and have a market value equal to, the inflated list price, and that the lower advertised sale price represents a special bargain.

68. The false or misleading nature of JCPenney's reference prices and discounts was, at all relevant times, masked or concealed such that an ordinary consumer exercising reasonable care under all the circumstances would not have known or discovered their false or misleading nature.

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

69.     JCPenney's unlawful conduct was intended to, or had the capacity to, deceive a substantial portion of the public.

70.     As a direct and proximate result of JCPenney's acts and omissions, all Washington consumers who have purchased a product from JCPenney that was advertised with a reference price or purported discount (including "free" offers, such as "Buy 1 Get 1 Free" or "Buy 1 Get 2 Free") have been harmed and have lost money or property.

71.     JCPenney continues to advertise false reference prices and false discounts to this day. There is no reason to believe that JCPenney will voluntarily and permanently cease its unlawful practices. Moreover, in the unlikely event that JCPenney were to cease its unlawful practices, JCPenney can and is likely to re-commence these unlawful practices.

72.     In acting toward consumers and the general public in the manner alleged herein, JCPenney acted with and was guilty of malice, fraud, and oppression and acted in a manner with a strong and negative impact upon Plaintiff, the Class, and the public.

## VII.    PLAINTIFF'S FACTUAL ALLEGATIONS

73.     Plaintiff Vicky Close is, and at all relevant times has been, a citizen and resident of the city of Kalama, in Cowlitz County, Washington.

74.     Ms. Close is a victim of JCPenney's false discount advertising scheme.

75.     As detailed above, JCPenney's false discounting practices have been ongoing since at least December 7, 2020, the date Defendant Penney OpCo LLC acquired and began managing the operations of JCPenney. During this time, Ms. Close has purchased products from JCPenney which were advertised with false reference prices and false discounts.

76.     For example, on December 23, 2023, Ms. Close visited the JCPenney website and ultimately purchased an item that was falsely discounted. While browsing JCPenney's website, Ms. Close viewed pricing and discount representations similar to those described in detail above. For example, Ms. Close viewed on the JCPenney homepage descriptions of purported "sales events" that were currently being offered by JCPenney. As shown in the screenshot below, JCPenney advertised on its homepage, which Ms. Close viewed, a sales event of "up to 65% OFF DoorBusters!," which "Ends 12/25," and an advertising banner

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

(which appeared at the top of every page of the website) which also stated: "Up to 65% Off Doorbusters!"

### Homepage of JCPenney Website December 23, 2023



77.     While browsing the JCPenney website, Ms. Close viewed webpages advertising the Multi Sac North/South Zip Around Crossbody Bag ("Bag"). Below is a partial screenshot of a webpage containing the Bag viewed by Ms. Close on December 23, 2023:

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

**Webpage on JCPenney's Website
December 23, 2023**



78.     As shown above, the Bag was advertised as a "***DOORBUSTER!***" item (i.e., part of the "Doorbuster" sales event that JCPenney was advertising), and was advertised with a strikethrough list price of "~~$50~~" and a "*sale*" price of "**$20**".

79.     Ms. Close clicked on the Bag listing, which directed her to the product page for the Bag. There, Ms. Close viewed a strikethrough list price of "~~$50~~" for the Bag. Next to this strikethrough list price, Ms. Close viewed the "sale" price of $20.

80.     Relying on JCPenney's representations, Ms. Close reasonably believed that the Bag was normally offered and sold by JCPenney for the $50 list price. Ms. Close reasonably believed that the Bag was thereby worth and had a market value of $50. Ms. Close reasonably believed that the advertised sale price of $20 represented a special and unusual bargain, where JCPenney was temporarily offering the Bag at $30 off (60% off) the regular and normal selling

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

price of $50. Relying on JCPenney's representations, Ms. Close the Bag to her online shopping cart and ultimately purchased it that day.

81. Ms. Close purchased the Bag by going through JCPenney's online checkout process. There, JCPenney made additional false discount representations. JCPenney featured a "Total Savings" dollar amount in red directly below the total price of the order throughout the checkout process, which amount JCPenney calculates by adding together the falsely advertised discount amounts for the items in the cart. Relying on JCPenney's misrepresentations, Ms. Close purchased the Bag, and had it shipped to her nearby JCPenney store where she picked it up.

82. However, JCPenney's pricing representations and advertised discounts were false and deceptive. In reality, and unbeknownst to Ms. Close, JCPenney had never offered the Bag at the purported regular price of $50. The Bag was not in fact worth the $50 price that JCPenney had led her to believe. Instead, JCPenney had always advertised the Bag at a discount from the purported regular price of $50—ever since JCPenney first introduced the product over two years earlier.

83. In fact, in the weeks prior to Ms. Close's purchase, JCPenney regularly offered the Bag for $20—the price Ms. Close paid—and frequently offered the Bag for even less than what Ms. Close paid. For example, from November 29, 2023, to December 3, 2023, JCPenney offered the bag for just $14—which was $6 less than what Ms. Close paid. With its false discount representations, JCPenney had tricked Ms. Close into paying more than what JCPenney often offered the Bag for.

84. JCPenney's advertised reference price and discount for the Bag were material misrepresentations and inducements to Ms. Close's purchase.

85. Ms. Close reasonably relied on JCPenney's material misrepresentations regarding the advertised reference price and discount for the Bag. If Ms. Close had known the truth, she would not have purchased the Bag at the price she paid.

86. As a direct and proximate result of JCPenney's acts and omissions, Ms. Close was harmed, suffered an injury-in-fact, and lost money or property.

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

87. Ms. Close has a legal right to rely now, and in the future, on the truthfulness and accuracy of JCPenney's representations regarding the advertised reference prices and discounts for its products.

88. Ms. Close faces an imminent threat of future harm. Ms. Close would purchase from JCPenney again in the future if she could have confidence regarding the truth of JCPenney's price and discount representations. But without an injunction, Ms. Close has no realistic way of knowing which, if any, of JCPenney's list prices, discounts, and sales are not false or deceptive.

89. Ms. Close will be harmed if, in the future, she is left to guess as to whether JCPenney is providing a legitimate sale or not, and whether its products are actually worth the amount that JCPenney is representing.

90. If Ms. Close were to purchase again from JCPenney without JCPenney having changed its unlawful and deceptive conduct alleged herein, Ms. Close would be harmed on an ongoing basis and/or would be harmed once or more in the future.

91. The deceptive practices and policies alleged herein, and experienced directly by Ms. Close, are not limited to any single product or group of products. Rather, JCPenney's deceptive advertising and sales practices, which advertise and state false reference prices and false percentage-off and dollar-off discounts, were, and continue to be, systematic and pervasive across all of JCPenney's products.

## CLASS ALLEGATIONS

92. Plaintiff brings this lawsuit on behalf of herself and all others similarly situated, pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3).

93. **Class Definition:** Plaintiff seeks to represent the following Class:

**All persons who, while in Wasington, within the applicable statute of limitations period, purchased from JCPenney one or more products advertised at a discount.**

94. Specifically excluded from the Class are JCPenney and any entities in which JCPenney has a controlling interest, JCPenney's agents and employees, the bench officers to

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

whom this civil action is assigned, and the members of each bench officer's staff and immediate family.

95. **Numerosity.** The number of members of the Class are so numerous that joinder of all members would be impracticable. Plaintiff does not know the exact number of Class members prior to discovery. However, based on information and belief, the Class comprises tens of thousands of individuals. The exact number and identities of Class members are contained in JCPenney's records and can be easily ascertained from those records.

96. **Commonality and Predominance.** This action involves multiple common legal or factual questions which are capable of generating class-wide answers that will drive the resolution of this case. These common questions predominate over any questions affecting individual Class members, if any. These common questions include, but are not limited to, the following:

a. Whether the alleged conduct of JCPenney violates the Washington Consumer Protection Act (RCW Chapter 19.86);

b. Whether the alleged conduct of JCPenney violates 16 C.F.R § 233.1 *et seq.* and 16 C.F.R. § 251.1;

c. Whether Plaintiff and the Class have suffered injury as a result of JCPenney's unlawful conduct;

d. Whether JCPenney should be ordered to pay damages to Plaintiff and to each Class member;

e. Whether JCPenney should be ordered to pay treble damages to Plaintiff and to each Class member; and

f. Whether JCPenney should be enjoined from engaging in the unlawful conduct alleged herein.

97. **Typicality.** Plaintiff's claims are typical of Class members' claims. Plaintiff and Class members all sustained injury as a direct result of JCPenney's standard practices and schemes, bring the same claims, and face the same potential defenses.

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

98. **Adequacy.** Plaintiff and her counsel will fairly and adequately protect Class members' interests. Plaintiff has no interests antagonistic to Class members' interests and is committed to representing the best interests of the Class members. Moreover, Plaintiff has retained counsel with considerable experience and success in prosecuting complex class action and consumer protection cases.

99. **Superiority.** A class action is superior to all other available methods for fairly and efficiently adjudicating this controversy. Each Class member's interests are small compared to the burden and expense required to litigate each of his or her claims individually, so it would be impractical and would not make economic sense for Class members to seek individual redress for JCPenney's conduct. Individual litigation would add administrative burden on the courts, increasing the delay and expense to all parties and to the court system. Individual litigation would also create the potential for inconsistent or contradictory judgments regarding the same uniform conduct. A single adjudication would create economies of scale and comprehensive supervision by a single judge. Moreover, Plaintiff does not anticipate any difficulties in managing a class action trial.

100. By its conduct and omissions alleged herein, JCPenney has acted and refused to act on grounds that apply generally to the Class members, such that declaratory relief is appropriate respecting the Class as a whole.

101. JCPenney is primarily engaged in the business of selling goods. Each cause of action brought by Plaintiff against JCPenney in this Complaint arises from and are limited to statements or conduct by JCPenney that consist of representations of fact about JCPenney's business operations or goods that are or were made for the purpose of obtaining approval for, promoting, or securing sales of or commercial transactions in, JCPenney's goods or the statements are or were made in the course of delivering JCPenney's goods. Each cause of action brought by Plaintiff against JCPenney in this Complaint arises from and is limited to statements or conduct by JCPenney for which the intended audience is an actual or potential customer, or a person likely to repeat the statements to, or otherwise influence, an actual or potential customer.

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

## CAUSES OF ACTION

### COUNT I
**Violation of the Washington Consumer Protection Act**
**RCW Chapter 19.86**

102.    Plaintiff realleges and incorporates by reference all paragraphs previously alleged herein.

103.    Plaintiff brings this claim in her individual capacity, in her capacity as a private attorney general seeking the imposition of public injunctive relief to protect the general public, and as a representative of the Class.

104.    The Washington Consumer Protection Act (the "CPA"), RCW 19.86, is Washington's principal consumer protection statute. The CPA broadly declares unlawful all "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020.

105.    The CPA allows any person "who is injured in his or his business or property by a violation of RCW 19.86.020" to bring an action to enjoin further violations and to recover actual damages (which may be trebled), costs, and attorneys' fees. RCW 19.86.090.

106.    JCPenney engages in the conduct of trade or commerce. For example, and without limitation, JCPenney engages in the sale of assets (including the tangible personal property that JCPenney sells) and engages in commerce directly or indirectly affecting the people of Washington.

107.    JCPenney's acts and omissions alleged herein, including advertising false reference prices and false discounts (including false "free" offers), constitute unfair or deceptive acts or practices which directly or indirectly affect the people of the State of Washington, and which caused injury to Plaintiff and the Class members' business or property.

108.    JCPenney's alleged conduct is deceptive because it "is likely to mislead a reasonable consumer." *Panag v. Farmers Ins. Co. of Washington*, 166 Wash. 2d 27, 50, 204 P.3d 885, 895 (2009). Further, "[t]he capacity of a marketing technique to deceive is determined with reference to the least sophisticated consumers among us." *Keithly v. Intelius*, 764 F. Supp. 2d 1257, 1268 (W.D. Wash. 2011); *see also Panag*, 204 P.3d at 895 (same).

CLASS ACTION COMPLAINT

27

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

1     109.    Additionally, JCPenney's acts and practices are directly contrary to the FTC

2     regulations by which the CPA states the Court should be guided, including the FTC regulations

3     on former price comparison advertising (16 C.F.R § 233.1) and on "free" offers (16 C.F.R. §

4     251.1 and 16 C.F.R § 233.4), as described in detail above.

5     110.    JCPenney's alleged conduct also constitutes <u>unfair</u> acts or practices under the

6     "substantial injury test" because JCPenney's acts or practices (1) cause substantial injury to

7     consumers (2) which is not reasonably avoidable by consumers themselves and (3) not

8     outweighed by countervailing benefits to consumers or to competition. *See Greenberg v.*

9     *Amazon.com, Inc.*, 553 P.3d 626, 641 (Wash. 2024). As detailed above, JCPenney's false

10    reference price and false discount representations caused substantial injury to consumers.

11    Consumers could not reasonably avoid these injuries because JCPenney's false advertising was

12    hidden from consumers. And, JCPenney's false advertising has no countervailing benefits to

13    consumers or to competition—let alone any that would outweigh the harm done.

14    111.    JCPenney's alleged conduct also constitutes <u>unfair</u> acts or practices because

15    JCPenney's conduct "is in violation of public interest." *Greenberg v. Amazon.com, Inc.*, 553

16    P.3d 626, 641 (Wash. 2024); *see also Klem v. Washington Mut. Bank*, 176 Wash. 2d 771, 787,

17    295 P.3d 1179, 1187 (2013) (same). As detailed above, JCPenney's false reference price and

18    false discount representations deceive consumers, deprive consumers of a fair opportunity to

19    accurately evaluate the offer, and result in purchasing decisions based on false pretenses. In

20    addition to harming consumers, JCPenney's false advertising also negatively affects the

21    integrity of competition in retail markets and harms honest competitors that sell the same or

22    similar products, or otherwise compete in the same market.

23    112.    With respect to any omissions, JCPenney at all relevant times had a duty to

24    disclose the information in question because, inter alia: (a) JCPenney had exclusive knowledge

25    of material information that was not known to Plaintiff and Class members; (b) JCPenney

26    concealed material information from Plaintiff and Class members; and (c) JCPenney made

27    partial representations which were false and misleading absent the omitted information.

28

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

113. JCPenney's unlawful conduct was intended to, or had the capacity to, deceive a substantial portion of the public.

114. JCPenney's misrepresentations are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

115. JCPenney's false reference price and false discount representations are likely to mislead a reasonable consumer, and in fact did mislead Plaintiff.

116. As a direct, substantial, and/or proximate result of JCPenney's unlawful conduct, Plaintiff and Class members suffered injury to their business or property.

117. Plaintiff and Class members reasonably relied on JCPenney's material misrepresentations, and would not have purchased JCPenney's products at the prices that they paid had they known the truth.

118. Plaintiff and Class members did not receive the benefits of their bargain. Plaintiff and Class members did not enjoy the actual discounts JCPenney represented and promised to them. Plaintiff and Class members did not receive items that were worth the inflated amount that JCPenney represented to them; the items did not regularly sell for, and were not actually worth, the fictitious and invented list price advertised by JCPenney.

119. By its conduct and omissions alleged herein, JCPenney caused the demand for its products to be artificially increased and caused all customers, including Plaintiff and Class members, to pay price premiums to JCPenney. Put differently, as a result of its misrepresentations, JCPenney has been able to charge a price premium for its products that it would not be able to charge absent the misrepresentations.

120. Treble damages are appropriate under these circumstances because, without limitation, JCPenney's false discount advertising scheme has been "an ongoing course of conduct affecting thousands of consumers" and thus has a "strong public interest impact." *See Matheny v. Unumprovident Corp.*, 594 F. Supp. 2d 1212, 1225 (E.D. Wash. 2009).

121. The acts and omissions of JCPenney pled herein are injurious to the public interest because said acts and omissions: (a) injured other persons in addition to Plaintiff;

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

(b) had the capacity to injure other persons; or (c) has the capacity to injure other persons. *See* RCW 19.86.093(3).

122.    The unlawful acts and omissions pled herein were committed in the course of JCPenney's business. The unlawful acts and omissions pled herein were, are and continue to be part of a pattern or generalized course of conduct. The acts and omissions of JCPenney pled herein were and are not reasonable in relation to the development and preservation of business.

123.    JCPenney's conduct has caused substantial injury to Plaintiff, Class members, and the general public.

124.    **Permanent public injunctive relief.** Plaintiff, acting as a private attorney general, seeks public injunctive relief under the CPA to protect the general public from JCPenney's false advertisements, misrepresentations, and omissions.

125.    The Washington Supreme Court treats consumers as "private attorneys general," and has held that consumers' ability to enjoin unlawful business practices is a primary purpose of the CPA:

> Private actions by private citizens are … an integral part of CPA enforcement. **Private citizens act as private attorneys general** in protecting the public's interest against unfair and deceptive acts and practices in trade and commerce. **Consumers bringing actions under the CPA do not merely vindicate their own rights; they represent the public interest and may seek injunctive relief even when the injunction would not directly affect their own private interests.**"

*Scott v. Cingular Wireless*, 160 Wash. 2d 843, 161 P.3d 1000, 1006 (2007) (emphasis added).

126.    This type of injunctive relief has been referred to as "public injunctive relief." *See McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 393 P.3d 85, 90 (2017) ("[P]ublic injunctive relief … is relief that has 'the primary purpose and effect of' prohibiting unlawful acts that threaten future injury to the general public.") (quoting *Broughton v. Cigna Healthplans of California*, 21 Cal. 4th 1066, 988 P.2d 67, 74 (1999)). In fact, the *Broughton* court likewise referred to consumers seeking public injunctive relief as "private attorneys general." *See Broughton*, 21 Cal. 4th at 1077.

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

127. JCPenney's misconduct, which affects and harms the general public, is ongoing in part or in whole and even if such conduct were to cease, it is behavior that is capable of repetition or re-occurrence by JCPenney absent a permanent public injunction. Accordingly, Plaintiff seeks an order enjoining JCPenney from committing the unlawful practices alleged herein.

128. The balance of the equities favors the entry of permanent public injunctive relief against JCPenney. Plaintiff, the members of the Class, honest competing businesses, and the general public will be irreparably harmed from JCPenney's ongoing false advertising absent the entry of permanent public injunctive relief against JCPenney.

129. Plaintiff lacks an adequate remedy at law to prevent JCPenney from engaging in the unlawful practices alleged herein. Plaintiff would shop at JCPenney again if she could have confidence regarding the truth of JCPenney's prices and the value of its products. Plaintiff will be harmed if, in the future, she is left to guess as to whether JCPenney is providing a legitimate sale or not, and whether JCPenney's products are actually worth the amount that JCPenney is representing.

130. Monetary damages are not an adequate remedy at law for future harm. *Clark v. Eddie Bauer LLC*, 2024 WL 177755, at *3 (9th Cir. Jan. 17, 2024). Monetary damages are inadequate for future harm for the following reasons, without limitation: First, damages are not an adequate remedy for future harm because they will not prevent JCPenney from engaging in its unlawful conduct. Second, damages for future harm cannot be calculated with certainty and thus cannot be awarded. For example, it is impossible to know what product(s) Plaintiff may want or need in the future. Third, injunctive relief is necessary (and monetary damages do not provide a plain, adequate and complete remedy) because, without forward-looking injunctive relief enjoining the unlawful practices, the courts would be flooded with future lawsuits by Class members, Plaintiff, and the general public for future violations of the law by JCPenney.

HATTIS & LUKACS
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

## PRAYER FOR RELIEF

**Public Injunctive Relief:**

A. Plaintiff Vicky Close, acting as a private attorney general, requests that the Court enter a public injunction against JCPenney under the CPA as follows:

1. Permanently enjoin JCPenney from engaging in the unlawful conduct alleged herein;

2. Order that JCPenney maintain the following records for at least two years for each daily product offering from the date of each advertisement and/or offer for sale of the product, for auditing purposes to ensure compliance with the ordered public injunctive relief: (1) the advertised list price for each product; (2) the offer price and/or net selling price of each item; and (3) any discount percentage and/or any other discount that was advertised and/or applicable to each product;

3. Retain jurisdiction to monitor JCPenney's compliance with the permanent public injunctive relief requested hereinabove; and

4. Order Cox to pay attorneys' fees and costs.

**Individual And Class Relief:**

B. Plaintiff Vicky Close, on behalf of herself and the proposed Class, requests that the Court order relief and enter judgment against JCPenney as follows:

1. Declare this action to be a proper class action, certify the proposed Class, and appoint Plaintiff and her counsel to represent the Class;

2. Declare that JCPenney's conduct alleged herein violates the CPA;

3. Order JCPenney to pay actual damages to Plaintiff and Class members in an amount to be determined at trial but which is more than $5 million, pursuant to, without limitation, RCW 19.86.090;

4. For an increase in the award of actual damages to Plaintiff and Class members of up to treble the actual damages pursuant to, without limitation, RCW 19.86.090;

5. Order JCPenney to pay attorneys' fees, costs, and pre-judgment and post-judgment interest to the extent allowed by law; and

---

CLASS ACTION COMPLAINT

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

6.     Grant such other relief as this Court deems just and proper.

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff demands a trial by jury on all issues so triable.


Respectfully submitted on September 9, 2024, by:

HATTIS & LUKACS

By: _____
Daniel M. Hattis

By: _____
Paul Karl Lukacs

By: _____
Che Corrington

Daniel M. Hattis, WSBA No. 50428
dan@hattislaw.com
Paul Karl Lukacs, WSBA No. 56093
pkl@hattislaw.com
Che Corrington, WSBA No. 54241
che@hattislaw.com
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
Tel: 425.233.8650
Fax: 425.412.7171

*Attorneys for Plaintiff*
*and the Proposed Class*

CLASS ACTION COMPLAINT

33

**HATTIS & LUKACS**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com